IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DIGITAL DOMAIN MEDIA GROUP, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.: 12-12568 (___)<br><br>(Joint Administration Requested) |

**MOTION PURSUANT TO SECTIONS 105, 361, 362, 363, 364, 1107, AND 1108 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 6003 FOR THE ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO (A) MAINTAIN AND RENEW EXISTING INSURANCE POLICIES, (B) CONTINUE INSURANCE PREMIUM FINANCING PROGRAMS, AND (C) PAY INSURANCE PREMIUM FINANCING OBLIGATIONS ARISING THEREUNDER; AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL OBLIGATIONS RELATED THERETO**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby submit this motion (the "Motion") for the entry of an order, pursuant to sections 105, 361, 362, 363, 364, 1107, and 1108 of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) authorizing the Debtors to (a) maintain and renew existing insurance policies and pay all policy premiums and brokers' fees arising thereunder or in connection therewith, (b) continue insurance premium financing programs, and (c) pay insurance premium obligations arising thereunder or in connection therewith; and (ii) authorizing financial

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal or foreign taxpayer identification number, if any, are as follows: D2 Software, Inc. (5602); DDH Land Holdings, LLC; DDH Land Holdings II, LLC; Digital Domain (8392); Digital Domain Institute, Inc. (6275); Digital Domain International, Inc. (9344); Digital Domain Media Group, Inc. (9505); Digital Domain Productions, Inc. (5757); Digital Domain Productions (Vancouver) Ltd. (6450); Digital Domain Stereo Group, Inc. (4526); Digital Domain Tactical, Inc. (6809); Mothership Media, Inc. (2113); Tradition Studios, Inc. (4883); Tembo Productions, Inc. (7634). The Debtors' mailing address is 10250 SW Village Parkway, Port St. Lucie, Florida 34987.

institutions to honor all obligations related thereto. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105, 361, 362, 363, 364, 1107, and 1108 of the Bankruptcy Code and Bankruptcy Rule 6003.

## BACKGROUND

3. On the date hereof (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Concurrently herewith, the Debtors have filed a motion with this Court requesting joint administration of the Debtors' chapter 11 cases (the "Chapter 11 Cases") for procedural purposes only. The Debtors are operating their business and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or an examiner in these Chapter 11 Cases, and no official committee has yet been appointed by the Office of the United States Trustee.

4. The Debtors and their affiliates (collectively, the "Company") are leading providers of computer-generated imagery animation and digital visual effects for major motion picture movie studios and advertisers, and also operate, in partnership with Florida State University, an educational institute offering programs in traditional motion picture arts and technical animation and special effects skills. The Company, its work, and its employees have been recognized with numerous entertainment industry awards and nominations, including seven

awards issued by the Academy of Motion Picture Arts and Sciences – three Academy Awards® for *Best Visual Effects* and four awards for *Scientific and Technical Achievement*.

5. The factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, is set forth in detail in the *Declaration of Michael Katzenstein in Support of First Day Motions* (the "Katzenstein Declaration") filed concurrently herewith and incorporated herein by reference.[2]

### A. Insurance Policies

6. In the ordinary course of the Debtors' businesses, the Debtors maintain numerous insurance policies providing coverage for, *inter alia*: general liability, property, workers compensation, network interruption, errors and omissions, and directors & officers liability (collectively, the "Policies"). These Policies are essential to the preservation of the Debtors' business and assets, and, in many cases, such insurance coverage is required by various regulations, laws, and contracts that govern the Debtors' business conduct.

7. The Policies protect the Debtors' employees, assets, and operations. By this Motion, the Debtors seek authority to continue to pay all premiums and other amounts due under the Policies in the ordinary course of its business.

### B. Paid in Full Premiums

8. In the case of some of the Policies, the Debtors paid all of the premiums due at the beginning of the Policy term to the insurance carrier (the "Insurance Carriers") that provides the Policy (the "Paid Policies"). Prior to the Petition Date, the Debtors paid the premiums and other amounts due on the Paid Policies in full. Thus, no amounts remain due and owing on the Paid Policies.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Katzenstein Declaration.

    **C.**    **Premium Financing Agreements**

    9.    In the case of the Debtors' errors and omissions policy and network interruption policy (together, the "Financed Policies") the Debtors entered into a *Commercial Insurance Premium Finance and Security Agreement* ("Premium Finance Agreement") with BankDirect Capital Finance (the "Insurance Financier"). In the Premium Finance Agreement, the Debtors, among other things, grant the Insurance Financier a security interest in the Debtors' unearned premiums, return premiums, dividend payments, and loss payments under the Financed Policies. A true and correct copy of the Premium Finance Agreement is attached hereto as Exhibit A.

    10.    Pursuant to the Premium Finance Agreement, the Insurance Financier agreed to pay each Insurance Carrier the entire premium on the Financed Policies. In return, the Debtors paid the Insurance Financier a down payment of $4,762.51. The Debtors pay the Insurance Financier the remaining premiums at $5,218.34 per month for a period of nine (9) months. The interest rate on the Premium Finance Agreement is 5.12% per annum. The Debtors will have paid the Premium Finance Agreement in full on March 31, 2013.

## RELIEF REQUESTED

    11.    The Policies are essential to the Debtors' business and the Debtors believe that it is in the best interests of their estates to continue to pay the amounts due under the Premium Finance Agreement, regardless of whether the payment became due prior to or after the Petition Date. Furthermore, the Debtors respectfully suggest that the payment of amounts that come due under the existing Premium Finance Agreement are within the ordinary course of their businesses. Unless the Debtors are authorized to continue to pay the Premium Finance Agreement on a monthly basis, the Insurance Financier will have the right to cancel the Financed

Policies and will be entitled to recover from its collateral, the unearned premiums. The termination of the Financed Policies would leave the Debtors' estates at risk of loss if an unforeseen event occurred. To avoid this risk, the Debtors would need to get new insurance policies and pay the policies, which they may not be able to obtain at favorable prices, and pay the policies in full, reducing the Debtors' estates' assets available to pay creditors.

12. The Debtors also seek authority to continue all of the Policies throughout the duration of these Chapter 11 Cases. The Debtors respectfully suggest that the continuation, renewal, or negotiation of these Policies fall squarely within the ordinary course of their businesses. Out of an abundance of caution, and to reduce the administrative burden of these Chapter 11 Cases as well as the expense of operating as debtors-in-possession, the Debtors request that the Court authorize them to renew the Policies as they expire in the ordinary course of business.

13. Finally, the Debtors request that all applicable banks and other financial institutions be authorized and directed to receive, process, honor and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related to the Policies, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date. The Debtors submit that they will have sufficient cash to promptly pay all obligations, to the extent described herein, on an ongoing basis and in the ordinary course of their businesses.

## BASIS FOR RELIEF REQUESTED

### A. Payment of Premium Financing Obligations and Installment Payments is Necessary in Order to Comply With United States Trustee Requirements

14. The Debtors believe that the ordinary course maintenance of their insurance policies and insurance financing programs, including payment of all monthly

obligations under the Premium Finance Agreement, without further order of the Court, is necessary and essential to the Debtors' operation of their businesses during these Chapter 11 Cases, especially where, as here, the Debtors' failure to pay their monthly obligations could have severe negative consequences for their estates and creditors.

15. Under the terms of the Premium Finance Agreement, the Insurance Financier may cancel the Financed Policies for nonpayment and may accelerate and declare due and payable the entire unpaid premiums upon the Debtors' failure to pay the monthly obligation. Because the Debtors are required to maintain insurance coverage during these Chapter 11 Cases, a cancellation of the Financed Policies would have material consequences to the Debtors' businesses. *See* U.S. Trustee's Operating Guidelines at 3 (requiring maintenance of appropriate insurance coverage). Even if the Insurance Financier did not immediately cancel the insurance coverage upon the Debtors' default, the Debtors' failure to pay its monthly obligation would result in a depletion of any unearned premium on the Financed Policies, thereby reducing the Insurance Financier's equity cushion. *See, e.g., In re Universal Motor Express, Inc.*, 72 B.R. 208, 210 (Bankr. W.D.N.C. 1987); *Schwinn Plan Comm. v. Transamerica Ins. Fin. Corp.*, 200 B.R. 980, 989 (Bankr. N.D. Ill. 1996).

### B. Payment of Premium Financing Obligations is Warranted Under Bankruptcy Code Sections 361, 362, and 363

16. Security interests created by premium finance arrangements generally are recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements. *See In re JII Liquidating Corp.*, 344 B.R. 875 (Bankr. N.D. Ill 2006); *In re Big Squaw Mountain Corp.*, 122 B.R. 831 (Bankr. D. Maine 1990); *TIFCO, Inc. v. U.S. Repeating Arms Co.*, 67 B.R, 990, 994-95 (Bankr. D. Conn. 1986); *Drabkin v. A.I Credit Corp.*, 9 B.R. 159, 164-66 (Bankr. D.D.C. 1981). As a secured creditor, the Insurance

Financier may be entitled to seek relief from the automatic stay, either to cancel the Debtors' insurance policies or to seek adequate protection of its investment. *See Universal Motor Express*, 72 B.R. at 211 (recognizing that a default under the financing arrangement and the resulting decline in value of the unearned premiums justified relief from the automatic stay).

17. As a secured creditor, the Insurance Financier may also be entitled to adequate protection of the value of its security, pursuant to section 361 of the Bankruptcy Code, to protect it against the diminution in the value of its collateral. Adequate protection may take many forms, including relief from the automatic stay, authority to apply unearned premiums to the outstanding debt, or continuing to make payments pursuant to the PFA. *See TIFCO*, 67 B.R. at 999. Moreover, pursuant to the Premium Finance Agreement, the Insurance Financier maintains a security interest in the Debtor's unearned premiums, and therefore the Insurance Financier may be entitled to adequate protection in its interests in the unearned premiums under section 363(e) of the Bankruptcy Code. The Debtors' failure to provide such adequate protection -- for example by failing to pay the ongoing installments due under the Premium Finance Agreement -- may constitute cause under section 362(d) of the Bankruptcy Code for the Insurance Financier to obtain relief from the automatic stay and terminate the underlying Policies.

18. Even if the Debtors were successful in preventing the Insurance Financier from lifting the automatic stay to pursue its remedies, such litigation likely would be contested and thus be very costly to the estates. More importantly, if unsuccessful in the automatic stay litigation, the Debtors may be unable to find a carrier willing to provide it similar insurance coverage or a company willing to finance the premiums without charging significantly higher premiums and fees.

### C. Continuation or Renewal of the Policies in the Ordinary Course of Business is Warranted Under Bankruptcy Code Section 363(b)-(c)

19. Under section 363(b) of the Bankruptcy Code, a debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1). Section 363(c) of the Bankruptcy Code authorizes a debtor in possession to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and . . . use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Both the payment of amounts due under the Premium Finance Agreement, and the continuation or renewal of existing Policies, fall squarely within the ordinary course of the Debtors' businesses.

20. Further, even if the continuation and/or renewal of the Policies was not considered to be ordinary course, under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on part of the debtor, such use should be approved. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *Stephens Indus. Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions."); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code).

21. Moreover, pursuant to section 105(a) of the Bankruptcy Code, "[t]he court

may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The basic purpose of section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 COLLIER ON BANKRUPTCY, § 105.01 (15th ed. rev. 2008). Essentially, section 105(a) codifies the bankruptcy court's equitable powers.

22. The Policies provide the Debtors with essential insurance coverage. Any lapse in the coverage to be provided under the Policies could expose the Debtors to substantial liability, monetary and otherwise, for injuries, damages, and penalties for failing to maintain proper insurance.

23. Therefore, in light of the importance of the Policies, the Debtors, should be permitted to exercise their reasonable business judgment to continue and/or renew the Policies as they expire.

### D. Absent the Relief Requested the Debtors will Suffer Immediate and Irreparable Harm

24. Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001 . . .

Fed. R. Bankr. P. 6003. *See also In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549-50 (Bankr. S.D. Fla. 2008) (holding that Bankruptcy Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm).

25. No court within the Third Circuit has interpreted the "immediate and irreparable harm" language in the context of Bankruptcy Rule 6003 in any reported decision.

However, the Third Circuit Court of Appeals has interpreted the same language in the context of preliminary injunctions. In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. Appx. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994). To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief requested in the Motion, the Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm as defined by the Third Circuit Court of Appeals.

26.  The Debtors believe that immediate and irreparable harm will result absent the relief sought herein. Specifically, the insurance premium financing payments may be outstanding or soon come due. The Debtors believe that if their insurance premium financing obligations are not paid in a timely manner and on an expedited basis, the Insurance Financier may seek to terminate the Financed Policies. Specifically, the effect of potential cancellation of Financed Policies -- or even litigation regarding the same -- would be devastating to the Debtors' estates, particularly at the early stages of these Chapter 11 Cases. Moreover, cancellation of the Financed Policies may render the Debtors in violation of both the United States Trustee Operating Guidelines and various state laws, as well as put at risk DIP financing.

27.  The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h) "[an] order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of fourteen

(14) days after entry of the order, unless the court orders otherwise." As set forth above, the payments proposed herein are essential to prevent irreparable damage to the Debtors' operations and value.

28. Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

29. To the extent that the Policies, the Premium Finance Agreement, or related agreements may be deemed executory contracts within the meaning of section 365 of the Bankruptcy Code, the Debtors do not at this time seek authority to assume such contracts.

## NOTICE

30. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee for the District of Delaware; and (ii) counsel to the DIP Lenders and the Senior Notes Agent. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered with respect to the Motion as required by Del. Bankr. LR 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

31. No prior Motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form annexed hereto as Exhibit B, granting the relief requested herein and such other and further relief as is just and proper.

Dated: September \_\_, 2012

PACHULSKI STANG ZIEHL & JONES LLP

_____
Debra I. Grassgreen (CA Bar No. 169978)
Robert J. Feinstein (NY Bar No. RF-2836)
Timothy P. Cairns (DE Bar No. 4228)
Maria A. Bove (NY Bar No. MB-8687)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: dgrassgreen@pszjlaw.com
　　　　rfeinstein@pszjlaw.com
　　　　tcairns@pszjlaw.com
　　　　mbove@pszjlaw.com

[Proposed] Counsel to the Debtors and Debtors in Possession