# EXHIBIT 1
# BID PROCEDURES

## BID PROCEDURES[1]

Set forth below are the bid procedures (the "Bid Procedures") to be employed by Digital Domain Media Group, Inc., et al. (collectively, the "Debtors") with respect to the sale of the assets and operations (the "Acquired Assets") of the Debtors (the "Sale"). It is contemplated that the Sale will be implemented through a purchase agreement (the "Purchase Agreement") with an affiliate of [Searchlight] (the "Buyer"), subject to the receipt of higher and better bids according to these Bid Procedures.

### Important Dates

- **September 12, 2012:** Proposed date of Bid Procedures Hearing
- **September 20, 2012:** Bidder Diligence and Financing Deadline
- **September 14, 2012:** Debtors to send Cure Notices to All Contract Counterparties
- **September 21, 2012:** Cure Objection Deadline
- **September 20, 2012 (8:00 p.m. prevailing Eastern Time):** Deadline to submit Bid to be considered for the Auction
- **September 21, 2012 (10:00 a.m. prevailing Eastern Time):** Date of Auction
- **September 21, 2012:** Deadline to file and serve objections to relief requested at Sale Hearing
- **September 21, 2012:** Deadline for counterparties to Assigned Contracts to object to assignment
- **September 23, 2012:** Announcement by Debtors of Successful Bidder and Backup Bidder
- **September 24, 2012:** Date of Sale Hearing
- **September 24, 2012:** Closing of Sale[2]

### Approval of Bid Procedures and Bid Protections

The Debtors shall request that the Court set a hearing (the "Bid Procedures Hearing") to occur on September 12, 2012 to approve, among other things, the Bid Procedures and the Bid Protections set forth in the Purchase Agreement (the "Bid Protections"). The Debtors will seek to shorten notice with respect to the relief requested at the Bid Procedures Hearing.

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the order approving these Bid Procedures (the "Bid Procedures Order") or the The Purchase Agreement, as applicable.

[2] Subject to extension upon the mutual consent of the Buyer and the DIP Lenders, each in their respective sole and absolute discretion.

## Auction Qualification Process

To be eligible to participate in the Auction each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Debtors to satisfy each of the following conditions:

(a)  Good Faith Deposit: Each Bid must be accompanied by a deposit in an amount equal to $1.5 million (or 10% of the Bid amount set forth in the amount of the Purchase Agreement) to a non-interest bearing escrow account to be identified and established by the Debtors (the "Good Faith Deposit").

(b)  Same or Better Terms: The Bid must be on terms that, in the Debtors' business judgment, with the consent of the DIP Agent (as defined in the Interim DIP Order) (acting at the direction of the Required DIP Lenders (as defined in the Interim DIP Order) and the Senior Notes Agent (as defined in the Interim DIP Order) (acting at the direction of the Initial Senior Noteholders) (as defined in the Interim DIP Order) (collectively, the "Lender Parties"), are substantially the same or better than the terms of the Purchase Agreement. A Bid must include executed transaction documents (the "Competing Transaction Documents") pursuant to which the Bidder proposes to effectuate a competing transaction (a "Competing Transaction"). A Bid shall include a copy of the Purchase Agreement marked to show all changes requested by the Bidder (including those related to purchase price). A Bid must propose a cash purchase price equal to (i) the purchase price under the Purchase Agreement plus (ii) $500,000 plus (iii) cash in the full amount of the Bid Protections ($750,000). The Bidder must demonstrate a commitment and the wherewithal to provide sufficient working capital to fund the post-Closing operations and provide adequate assurance of performance of the Debtors' obligations in the Business to the satisfaction of the Debtors and Lender Parties. The Debtors reserve the right to consider, on consent of the Lender Parties, a Bid or multiple Bids for groups or lots of assets (or any portion thereof) in their discretion. The Competing Transaction Documents shall also identify any executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it at the closing pursuant to the Competing Transaction (collectively, the "Assigned Contracts"), and must obligate the Bidder to pay all Cure Costs and satisfy all adequate assurance of future performance obligations associated therewith.

(c)  Corporate Authority: Each Bid shall be accompanied by written evidence that is reasonably acceptable to the Debtors and Lender Parties demonstrating appropriate corporate authorization to consummate the proposed Competing Transaction; provided, however, that, if the Bidder is an entity specially formed for the purpose of effectuating the Competing Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors and Lender Parties of the approval of the Competing Transaction by the equity holder(s) of such Bidder.

(d) <u>Proof of Financial Ability to Perform</u>: Each Bid shall be accompanied by written evidence or other form of credit support that the Debtors and Lender Parties reasonably conclude demonstrates that the Bidder has the necessary financial ability to close the Competing Transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such Competing Transaction. Such information may include, inter alia, the following:

(i) contact names and numbers for verification of financing sources,

(ii) evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the Competing Transaction;

(iii) the Bidder's current financial statements (audited if they exist); and

(iv) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors and Lender Parties demonstrating that such Bidder has the ability to close the Competing Transaction; <u>provided, however</u>, that the Debtors shall determine, in their reasonable discretion, in consultation with the Debtors' advisors and Lender Parties, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(e) <u>Contingencies</u>: A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

(f) <u>Irrevocable</u>: A Bid must be irrevocable through the Auction, provided, however, that if such Bid is accepted as the Successful Bid or the Backup Bid (as defined herein), such bid shall continue to remain irrevocable, subject to the terms and conditions of the Bid Procedures.

(g) <u>Bid Deadline</u>: The Debtors must receive a Bid in writing, on or before 8:00 p.m. (prevailing Eastern Time) on September 20, 2012 or by such later date or time as the Lender Parties may agree (the "<u>Bid Deadline</u>").

Subject to the provisions of the first paragraph under "Auction" below, a bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "<u>Qualified Bid</u>," and such Bidder shall constitute a "<u>Qualified Bidder</u>." Notwithstanding anything herein to the contrary, any Lender Party Credit Bid (as defined below) submitted in accordance with the provisions of these Bid Procedures shall constitute a "Qualified Bid" and the Lender Party submitting such bid a "Qualified Bidder."

## Auction

If more than one Qualified Bid is received by the Bid Deadline (other than the Purchase Agreement), the Debtors will conduct an auction (the "<u>Auction</u>") to determine the highest and best Qualified Bid. This determination of what constitutes a "Qualified Bid" shall take into account any factors the Debtors and Lender Parties reasonably deem relevant to the value of the

Qualified Bid to the estate, which may include, inter alia, the following: (i) the amount and nature of the consideration; (ii) the proposed assumption of any liabilities, if any; (iii) the ability of the Qualified Bidder to close the proposed Sale; (iv) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (v) any purchase price adjustments; (vi) the impact of the Sale on any actual or potential litigation; (vii) the net after-tax consideration to be received by the Debtors' estates; (viii) the ability of the applicable Qualified Bidder to retain the Business's relationships with its key employees and material customers; (ix) whether the Bidder has demonstrated a commitment and the wherewithal to provide sufficient working capital to fund the Business's post-Closing operations and provide adequate assurance of performance of the Debtors' obligations in the Business to the satisfaction of the Debtors and Lender Parties; and (x) any other factors deemed relevant by the Debtors and the Lender Parties (collectively, the "Bid Assessment Criteria"). If no Qualified Bid (other than the Purchase Agreement) is received by the Bid Deadline, the Debtors, on consultation with the Lender Parties, shall not conduct the Auction.

The Auction shall take place at 10:00 a.m. (prevailing Eastern Time) on September 21, 2012, at the Wilmington, Delaware offices of Debtors' counsel, Pachulski Stang Ziehl & Jones LLP or such later time on such day or other place as the Debtors shall notify all Bidders who have submitted Qualified Bids (so long as such later time and other place is with the consent of the Lender Parties and the Buyer). The Auction shall be conducted according to the following procedures:

(a) The Debtors Shall Conduct the Auction.

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction the Debtors shall describe the terms of the Purchase Agreement or, in the event a higher and better Bid is received, such Qualified Bid (the "Auction Baseline Bid").

All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all Bidders who have submitted Qualified Bids.

(b) Terms of Overbids.

An "Overbid" is any Qualifying Overbid made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(i) Minimum Overbid Increment.

Any Overbid after the Auction Baseline Bid shall be made in increments of at least $250,000. Additional consideration in excess of the amount set forth in the Auction Baseline Bid may include only cash and the assumption of debt or marketable securities.

(ii) Remaining Terms are the Same as for Qualified Bids.

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid.

To the extent not previously provided (which shall be determined by the Debtors), a Bidder (other than the Buyer) submitting an Overbid must submit, in the Debtors' discretion (after consultation with the Lender Parties) as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Bidder's ability to close the Competing Transaction proposed by such Overbid.

(iii) Announcing Overbids.

The Debtors shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtors' estates based on, inter alia, the Bid Assessment Criteria.

(iv) Consideration of Overbids.

The Debtors reserve the right, in their reasonable business judgment, and on consent of the Lender Parties, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtors (and Lender Parties) and individual Bidders; allow individual Bidders to consider how they wish to proceed; and give Bidders the opportunity to provide the Debtors (and Lender Parties) with such additional evidence as the Debtors in their reasonable business judgment, and on consultation with Lender Parties, may require, that the Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Competing Transaction at the prevailing Overbid amount.

(v) Credit Bidding.

Except as expressly provided herein, no credit bidding, under Bankruptcy Code section 363(k) or otherwise, shall be permitted at the Auction without prior authorization of the Bankruptcy Court.

Each of the Lender Parties shall have the right as described more fully in the Interim DIP Order, to credit bid in connection with any sale of the DIP Collateral (as defined in the Interim DIP Order) or Prepetition Collateral (as defined in the Interim DIP Order) (a "Lender Party Credit Bid"). Notwithstanding the foregoing, such parties unconditionally waive their respective rights to credit bid for any DIP Collateral or Prepetition Collateral that is the subject of the Buyer's Purchase Agreement unless such Purchase Agreement is terminated or the Buyer (i) defaults under its obligation to purchase the Debtors' assets as described in the Purchase Agreement or (ii) affirmatively declines to bid following any initial Overbid at the Auction (unless parties are permitted to pass during one or more rounds of bidding).

In the event of any credit bid under section 363(k) of the Bankruptcy Code of an allowed secured claim or otherwise, or if a portion of a Bid includes consideration other than cash, such Bid must include sufficient cash to pay in full any Bid Protections to which the Buyer may become entitled to under the Purchase Agreement, the Bid Procedures Order or otherwise.

    (c)    Backup Bidder.

Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted, the party with the next highest or otherwise best Qualified Bid at the Auction, as determined by the Debtors, in the exercise of their business judgment, and on consent of the Lender Parties, shall be required to serve as a backup bidder (the "Backup Bidder"). The Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of 5:00 p.m. (prevailing Eastern time) on the date that is seven (7) days after the date of the Sale Hearing (the "Outside Backup Date") or the closing of the transaction with the Successful Bidder, or otherwise in accordance with the terms of its Bid or Overbid, as applicable. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Successful Bidder, the Debtors may (with consent of the Lender Parties) designate the Backup Bidder to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction, with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder.

Notwithstanding anything herein to the contrary, a Lender Party Credit Bid shall not be required to be the Backup Bid, unless the Lender Party submitting such Lender Party Credit Bid expressly consents in writing. If the Buyer is not the Successful Bidder, but instead the next best bidder, then the Purchase Agreement, any Bid or Overbid submitted by the Buyer, as the case may be, shall serve as the Backup Bid through and including September 28, 2012, provided, however, that after such date neither the Purchase Agreement, nor any Bid or Overbid submitted by the Buyer, shall be required to be the Backup Bid, unless the Buyer expressly consents in writing.

    (d)    Additional Procedures.

The Debtors may announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time to make subsequent Overbids) for conducting the Auction so long as such rules are not inconsistent with these Bid Procedures or are otherwise with the consent of the Lender Parties.

At the conclusion of the Auction, the Debtors, in consultation with the Lender Parties, reserve the right to re-open the Auction solely for the purpose of auctioning any remaining assets not sold to the Successful Bidder.

    (e)    Consent to Jurisdiction as Condition to Bidding.

The Buyer, all Qualified Bidders and all Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in

connection with any disputes relating to the Purchase Agreement, the Auction or the construction and enforcement of any Competing Transaction Documents.

      (f)      Closing the Auction.

The Auction shall continue until there is only one Qualified Bid that the Debtors determine in their reasonable business judgment, after consultation with their financial and legal advisors and the Lender Parties and with the consent of the Lender Parties, is the highest and best Qualified Bid at the Auction (the "Successful Bid" and the Bidder submitting such Successful Bid, the "Successful Bidder"). In making this decision, the Debtors, in consultation with their financial and legal advisors, shall consider the Bid Assessment Criteria. The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid and the Successful Bidder has submitted fully executed Transaction Documents memorializing the terms of the Successful Bid.

Notwithstanding anything herein to the contrary, in the event no Auction is held because no Qualified Bids (other than the Purchase Agreement) is timely submitted, the "Successful Bid" shall be the Purchase Agreement and the Buyer shall be the "Successful Bidder."

Subject to the exercise of their fiduciary duties, the Debtors shall not consider any bids submitted after the conclusion of the Auction.

### Procedures for Determining Cure Amounts and Adequate Assurance for Counterparties to Assigned Contracts

By [_____], the Debtors shall send a notice to each counterparty to an executory contract or unexpired lease setting forth the Debtors' calculation of the cure amount, if any, that would be owing to such counterparty if the Debtors decided to assume or assume and assign such executory contract or unexpired lease (each a "Cure Notice"). Any counterparty that objects to the amount set forth in the Cure Notice must file and serve an objection (a "Cure Objection"), on or before 4:00 p.m. prevailing Eastern Time on (a) counsel to the Debtors, (1) Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 36th floor, New York, New York 10017, Attn: Robert Feinstein and (2) Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, CA 94111, Attn: Debra I. Grassgreen and Joshua M. Fried; (b) counsel to the DIP Lenders, (1) Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, NY 10022 (attn: Adam Harris and David Hillman) and (2) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, DE 19801 (attn: Adam G. Landis); (d) counsel to the DIP Agent and Senior Notes Agent, (1) Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007 (attn: George W. Shuster, Jr.) and (2) Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, DE 19801 (attn: Brett D. Fallon); (e) counsel to the proposed buyer (1) Akin Gump Strauss Hauer & Feld, 2029 Century Park East, Suite 2400, Los Angeles, CA 90067-3010, Attn: David Simonds, and (2) Akin Gump Strauss Hauer & Feld; One Bryant Park New York, NY 10036-6745, Attn: Adam Weinstein; and (f) the Office of the United States Trustee, 844 King Street, Suite 2207 Lockbox 35, Wilmington DE 19801. (collectively, the "Notice Parties"), such that it is actually received **no later than 4:00 p.m. prevailing Eastern Time on September 21, 2012** (the "Cure Objection Deadline"). If a

counterparty does not timely file and serve a Cure Objection that party will be forever barred from objecting to the Debtors' proposed cure amount. Where a counterparty to an Assigned Contract files a timely Cure Objection asserting a higher cure amount than the amount listed in the Cure Notice and the parties are unable to consensually resolve the dispute, the amount to be paid under section 365 of the Bankruptcy Code, if any, with respect to such objection will be determined at a hearing to be requested by the Debtors or by the objecting counterparty, which hearing must occur not later than the Sale Hearing.

By [_____], the Debtors will send a notice via U.S. Mail to each counterparty to a contract designated as an Assigned Contract in the Successful Bid or the Backup Bid (a "Contract Assignment Notice"). The Contract Assignment Notice will contain a description of the proposed Assigned Contract and the cure amount based upon the Debtors' books and records. Any counterparty that objects to the assignment of their Assigned Contract or to the adequate assurance of the Successful Bidder's or Backup Bidder's ability to perform must file and service an objection (a "Contract Assignment Objection") on the Notice Parties, such that it is received **no later than 4:00 p.m. prevailing Eastern Time on September 21, 2012,** provided however that the counterparty raise objections solely on the basis of the Buyer's or Successful Bidder's ability to provide adequate assurances of future performance at the Sale Hearing.

## Sale Hearing

The Debtors will seek a hearing (the "Sale Hearing") to be held on September 24, 2012 at which the Debtors will seek approval of the Sale with the Successful Bidder. Objections to the Sale must be filed and served so that they are actually received by the Notice Parties no later than 4:00 p.m. (prevailing Eastern Time) on September 21, 2012.

## Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estate absent further order of the Bankruptcy Court. The Good Faith Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing.

The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of (i) two (2) business days after the closing of the Sale and (ii) 60 days after conclusion of the Auction. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards its purchase price.