## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | ) Chapter 11 |
|  | ) |
| **DDMG Estate, *et al.*,** | ) Case No.: 12-12568 (BLS) |
|  | ) |
| Debtors. | ) **Doc. Ref. Nos. 291 and 480** |
|  | ) |

### LIMITED OBJECTION AND RESERVATION OF RIGHTS OF THE DISNEY ENTITIES TO DEBTORS' MOTION FOR ORDER (I) APPROVING SEPARATE SALES OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (II) ASSUMING AND ASSIGNING CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF

Walt Disney Studios Motion Picture Production ("**Disney Studios**") and certain of its affiliates (the "**Disney Entities**") hereby object and reserve all of their rights and remedies (the "**Limited Objection**") to Debtors' Motion for Order (I) Approving Separate Sales of Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief [Docket No. 291] (the "**Sale Motion**"). In support of this Limited Objection, the Disney Entities respectfully represent as follows:

## I.    BACKGROUND

1.    On September 11, 2012 (the "**Petition Date**"), Debtors filed their voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). Debtors thereafter sold substantially all of their California and Vancouver assets (the "**Asset Sale**") to Galloping Horse America, LLC (the "**Asset Buyer**") in accordance with an Asset Purchase Agreement between the Asset Buyer and Debtors, dated as of September 24, 2012. The Disney Entities filed a limited objection regarding certain agreements included in the Asset Sale, which was resolved consensually with Debtors and the Asset Buyer. The Asset Sale closed on September 27, 2012, subject to a sale order that included protective language for the Disney Entities' rights under these agreements.

2.      On November 8, 2012, this Court entered its Order (A) Approving Procedures for Separate Sales of Debtors' Assets; (B) Scheduling Auction and Hearing to Consider Approval of Sale and Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (C) Approving Forms of Notice; and (D) Granting Related Relief (the "**Sale Procedures Order**"). Marvel Entertainment LLC and certain of its affiliates (collectively, the "**Marvel Entities**") and the Disney Entities each filed a limited objection to both the Sale Motion and Debtors' Motion seeking the Sale Procedures Order (each, a "**Sale Procedures Objection**") [Docket Nos. 371 and 369 respectively]. The two Sale Procedures Objections were resolved for purposes of that hearing by the inclusion of paragraph 8 in the Sale Procedures Order, thereby preserving any and all objections that the Disney Entities or the Marvel Entities may have to the Sale Motion.

3.      Pursuant to the Sale Motion and the Sale Procedures Order, Debtors now request authority to sell, among other things, the intellectual property assets originally held by In Three, Inc. ("**In Three**") (an entity acquired prepetition by Debtors) related to the conversion of two dimensional artwork to three dimensional artwork, including six patents and two patent applications, (the "**In Three Patents**") in a separate sale (the "**Patent Sale**") to a buyer who has not yet been identified (the "**Patent Buyer**").

4.      The Disney Entities hereby reiterate and incorporate by reference (i) all objections set forth in their Sale Procedures Objection and (ii) the related Declaration of Robert Faulkner In Support of Limited Objection and Reservation of Rights of the Disney Entities to the Debtors' Motions to Approve Sale Procedures and Separate Sales of Assets [Docket No. 370], true and correct copies of which are attached hereto as Exhibits 1 and 2.

5.      As set forth in more detail in the Sale Procedures Objection, the Disney Entities are parties to a number of Production Agreements (as defined in the Sale Procedures Objection) with Debtors or In Three as their predecessor in interest that are potentially affected by the Patent Sale.[1]  Pursuant to the Disney/In Three Agreements, Debtors agreed to provide those certain

---

[1] The Production Agreements all contain confidentiality clauses and certain confidential commercially sensitive information, and therefore are not attached to this Limited Objection. Debtors should already have copies

visual special effects ("**VFX**") services requested by Disney for the motion pictures covered thereby (collectively, the "**Works**").

6.    The Production Agreements all grant non-exclusive, fully paid, royalty-free licenses to the Disney Entities to use all or any portion of the intellectual property of In Three or DDP that has been incorporated into the Works (the "**Incorporated IP**"), for the purpose of distributing, displaying, or otherwise exploiting the Works (collectively, the "**Limited Licenses**"). The Production Agreements also include substantially similar covenants by In Three or DDP not to challenge in any forum the Disney Entities' rights to exploit the Works and not to thwart, hinder, or subvert the Disney Entities' use of the Limited Licenses (collectively, the "covenant not to sue rights" or "**CNTS Rights**"). As set forth in more detail in the Sale Procedures Objection, pursuant to applicable patent law, such covenants not to sue are generally deemed equivalent to non-exclusive licenses.

7.    In their reply [Docket No. 398], Debtors have broadly asserted that they dispute the Disney Entities' claims to license rights with respect to the In Three Patents. In effect, Debtors appear to contend that the proposed sale of the In Three Patents can cut off or impair the Disney Entities' rights to distribute, modify, and otherwise exploit their own films, including among others *Tron Legacy* and *Alice in Wonderland*, just because those Works incorporate 3D VFX that were created using the In Three Patents -- VFX work that was previously commissioned and paid for by the Disney Entities. On the contrary: as set forth in the Sale Procedures Objection, the Limited Licenses and CNTS Rights constitute licenses that are fully protected by Section 365(n). *See In re Spansion Inc.*, 2011 WL 3268084 (D. Del. July 28, 2011), *appeal docketed*, No. 1:10-CV-00252 (3d Cir. Aug. 25, 2011). It really should not be debatable that the Disney Entities' Limited Licenses and CNTS Rights with respect to the Incorporated IP are entitled to be expressly protected in any order approving the Sale Motion (the "**Sale Order**").

---

of the Production Agreements, but the Disney Entities are willing to submit the Production Agreements under seal, at the appropriate time, if requested to do so.

8.      The real dispute appears to concern the Disney Entities' broader rights to use the In Three Patents to create new films and for other purposes -- rights that arise from the G-Force Agreement. That agreement includes an additional provision granting the Disney Entities the right to an unlimited, non-exclusive, perpetual worldwide license to use the In Three Patents (the "**In Three Patent Rights**") in exchange for a fee to be negotiated between the parties in good faith on a most-favored-nation basis (the "**MFN Clause**"). Since then, Debtors and In Three have granted to other parties unlimited, non-exclusive, perpetual worldwide licenses in the In Three Patents on a royalty-free basis, thereby entitling the Disney Entities to an In Three patent license on the same royalty-free terms (the "**In Three Patent License**").

9.      As more fully set forth in the Sale Procedures Objection and the Faulkner Declaration filed therewith, the Disney Entities and Debtors engaged in discussions to finalize the agreement memorializing the In Three Patent License (the "**License Agreement**"), but the petition commencing this case was filed before the agreement was executed.

10.     The Disney Entities contend that, notwithstanding DDP's failure to execute the License Agreement before filing this Case, the grant of the In Three Patent License was effective upon the 31st day after the Disney Entities requested the License Agreement, pursuant to the express terms of the G-Force Agreement, as no particular form of documentation is required to effectuate a grant of a patent license under applicable nonbankruptcy patent law.

11.     The G-Force Agreement expressly provides that the Disney Entities' IP Patent Rights and CNTS Rights survive the expiration or termination of the G-Force Agreement and are binding upon In Three's successors and assignees. The Disney Entities do not oppose the proposed sale of the In Three Patents, provided that their Limited Licenses, the CNTS Rights, the In Three Patent License, and the In Three Patent Rights to continue to use the In Three Patents are preserved in the orders entered in connection with the Sale Motion.

12.     It should be noted that other parties have filed similar objections. LucasFilm Ltd. filed a limited objection to the Sale Motion asserting that it too has a license agreement with In Three, including CNTS rights, that is protected by §365(n). [Docket No. 497]. Samsung

4

Electronics Co. Ltd. has filed an objection asserting that it also has a license agreement with In Three, and proposed language for the Sale Order that would preserve licensees' rights. [Docket No. 511]. Other parties may also have similar licenses that should be preserved.

## II.    ARGUMENT

13.    Pursuant to Bankruptcy Code § 365(n), the Disney Entities are entitled to retain all of their rights pursuant to the Limited Licenses, the CNTS Rights, the In Three Patent License, and the In Three Patent Rights to continue to use the In Three Patents and to treat the Request for the License Agreement as a license granted on a royalty-free basis, regardless of whether the In Three Patents are sold or transferred and regardless of whether the Production Agreements are assumed, assigned, rejected or otherwise deemed terminated.

### A.    THE LIMITED LICENSES AND CNTS RIGHTS RELATED TO THE DISNEY ENTITIES' FILMS ARE PROTECTED BY §365(n)

14.    Section 365(n) gives a party with intellectual property rights granted in a rejected contract the right to retain its rights as they existed as of the petition date.  The Limited Licenses and CNTS Rights squarely fall into this protected category and provide the Disney Entities with unambiguous, non-exclusive licenses to use the Incorporated IP to exploit the Works.  Such licenses are standard in the industry, and without them, the Disney Entities would be severely restricted in their ability to display or distribute the Works without risking an infringement challenge.  Presumably, every other producer who has incorporated some element of the In Three Patents in its motion pictures or other works has also been granted similar limited licenses.  Such limited licenses should be recognized and protected by the Sale Order, which should provide that the Patent Sale is subject to, not "free and clear" of, the Limited Licenses, the CNTS Rights, and other similar limited licenses.

### B.    THE IN THREE PATENT LICENSE AND IN THREE PATENT RIGHTS ARE ALSO ENTITLED TO PROTECTION UNDER § 365(n)

15.    The operative language in the G-Force Agreement provides that, once the Disney Entities exercise their option to be granted a full, nonexclusive license for the In Three Patents,

such license is required to be granted. All terms for such license are set forth in the G-Force Agreement other than the royalty fee rate, which is to be established under the MFN Clause. Thus, the In Three Patent License and the In Three Patent Rights are also entitled to the protections of §365(n). The execution of the License Agreement was not required to effectuate that grant under the circumstances. As held in *Spansion*, no "special language is required to create a patent license" and that settlement agreement's "clear language demonstrates that the parties entered into a valid contract by exchanging promises to act or refrain from acting." *Spansion* at *7; *see also, e.g., De Forest Radio Tel. Co. v. United States*, 273 U.S. 236, 241 (1927) ("No formal granting of a [patent] license is necessary in order to give it effect. Any language used by the owner of the patent, or any conduct on his part exhibited to another from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license . . . ."). Under the circumstances here, execution of the formal License Agreement would have merely served to memorialize, in conventional form, the terms of the In Three Patent License to avoid any later disputes.

16.     Upon the Disney Entities' exercise of their right to request the In Three Patent License pursuant to the Request (as defined in the Sale Procedures Objection), DDP as In Three's successor was required to grant the IP Patent License within thirty days, the royalty fee having been determined by the MFN Clause. No further action by DDP was required under the circumstances to make the Patent License effective.

17.     As a matter of applicable California contract law and the cases cited in the Sale Procedures Objection, DDP was obligated to grant the In Three Patent License, and that license should now be deemed given. An option is considered a unilateral contract that binds the optionor (In Three/DDP) on the exercise of the option by the optionee (the Disney Entities). Stated differently, an option is an irrevocable offer that the optionee can convert into a binding bilateral contract by acceptance of the offer, *i.e.*, exercise of the option. Pursuant to §365(n), the Disney Entities are entitled to retain the In Three Patent License (alternatively, should the license

itself not be deemed to have been granted, the In Three Patent Rights) granted by DDP and its predecessors. The Sale Order should therefore expressly provide that the Patent Sale will be subject to, not "free and clear" of, the In Three Patent License and the In Three Patent Rights.

## CONCLUSION

Based on the foregoing, the Disney Entities respectfully object on a limited basis to the Sale Motion. The Disney Entities respectfully request that the Sale Order expressly provide that the Patent Sale is subject to the Disney Entities' Limited Licenses, CNTS Rights, In Three Patent License, and In Three Patent Rights, as rights protected under § 365(n).

Dated:   November 21, 2012

POTTER ANDERSON & CORROON LLP

*R. Stephen McNeill*

Theresa V. Brown-Edwards (DE Bar No.4225)
R. Stephen McNeill (DE Bar No. 5210)
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000

-and-

ARNOLD & PORTER LLP
Lisa Hill Fenning (California SBN 89238)
Harry E. Garner (California SBN 254942)
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90017
Telephone: (213) 243-4000

*Attorneys for The Disney Entities*

1083946